Adam J. Zapala (SBN 245748)
Tamarah P. Prevost (SBN 313422)
James G. B. Dallal (SBN 277826)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

*Interim Co-Lead Class Counsel on Behalf of Commercial and Institutional Indirect Purchasers*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In Re Broiler Chicken Antitrust Litigation*<br><br>This Document Relates to:<br>All Class Cases | Case No. _____<br><br>Action Pending in:<br>**Northern District of Illinois**<br>Case No. 1:16-cv-08637<br><br>**COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA** |

COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 2

II. FACTUAL BACKGROUND ................................................................................ 4

    A. The Underlying Case and Golden State Foods ....................................... 4

    B. CIIPPs' Subpoena and Golden State's Significance in the Market ...... 6

    C. Compliance with Rule 37 and CIIPPs' Efforts to Meet and Confer With Golden State ................................................................................... 7

        1. CIIPPs' Substantial Efforts to Meet and Confer with Golden State ........................................................................................... 7

        2. Compliance with Local Rule 37-1 ............................................. 10

III. ARGUMENT ....................................................................................................... 10

    A. CIIPPs Served Golden State with a Valid Subpoena ........................... 10

    B. Golden State Failed to Timely Respond to CIIPPs' Subpoena, Waiving All Objections .......................................................................... 11

    C. CIIPPs Seek Transactional Data That Is Routinely Produced in Indirect Purchaser Antitrust Cases ....................................................... 11

    D. Despite Golden State's Refusal to Properly Meet and Confer, CIIPPs Have Obtained Substantial Evidence that it has Responsive Documents in its Possession, Custody, or Control .............................. 13

IV. CERTIFICATE OF CONFERENCE ................................................................ 15

V. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5429718 (N.D. Cal. June 20, 2013) ...................................................... 12

*In re: Cathode Ray Tube (CRT) Litig.*,
  2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) ....................................................... 12

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*
  2014 WL 585750 (S.D. Tex. Feb. 14, 2014) ........................................................ 11

*Direct Purchaser Class Plaintiffs v. Apotex Corp.*,
  2017 WL 4230124 (S.D. Fla., May 15, 2017, No. 16-62492-MC) .................... 12

*In re Disposable Contact Lens Antitrust*
  329 F.R.D. 336 (M.D. Fla. 2018) .................................................................... 5, 12

*Isenberg v. Chase Bank USA, N.A.*,
  661 F.Supp.2d 627 (N.D. Tex. 2009) ................................................................... 11

*James Freeman d/b/a Freeman & Associates, Inc. v. Dekker Vacuum Technologies, Inc.*,
  2015 WL 8074056 (S.D. Tex. Dec. 4, 2015) ....................................................... 14

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
  2010 WL 11613859 (D.D.C., Sept. 9, 2010) ....................................................... 12

*In re Rail Freight Fuel Surcharge Antitrust Litigation*
  292 F.Supp.3d 14 (D.D.C. 2017) ..................................................................... 5, 12

*In re Static Random Access Memory (SRAM) Antitrust Litigation*,
  264 F.R.D. 603, 613, 615 (N.D. Cal. 2009) ........................................................... 5

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
  2012 WL 1940662 (E.D. Cal., May 29, 2012) ................................................ 5, 12

*In re: Static Random Access Memory (SRAM) Antitrust Litig.*,
  No. 07-MD-1819-CW (N.D. Cal. Mar. 1, 2010) ................................................. 12

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) ......................................................................... 12

**Rules**

Federal Rules of Civil Procedure
    Rule 37 ....................................................................................................... 7
    Rule 37(a)(2) ............................................................................................ 11
    Rule 45 ........................................................................................... 7, 10, 11
    Rule 45(c)(2) ............................................................................................ 16
    Rule 45(c)(2)(A) ...................................................................................... 10
    Rule 45(d)(2)(B) ...................................................................................... 11
    Rules 45(e)(2)(B) .................................................................................... 11

**Other Authorities**

Golden State Foods, *About Us*, available at
    https://goldenstatefoods.com/about-us/ ................................................... 5

Golden State Foods, *About Us*, available at
    https://goldenstatefoods.com/about-us/history/ ................................. 3, 6

Golden State Foods, Locations, available at
    https://goldenstatefoods.com/locations/ ............................................... 10

Golden State Foods, Quality Custom Distribution, available at
    https://goldenstatefoods.com/logistics/quality-custom-distribution/ ..... 6

# COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION TO ENFORCE SUBPOENA

The Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") in the above-entitled action, by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure ("Rules") 45(c)(2), 45(e) and 45(g) hereby move for the entry of an order enforcing and compelling Respondent Golden State Foods Corp. ("Golden State" or "GSF") to produce documents in response to a non-party subpoena served on Golden State by CIIPPs on May 29, 2019 in the underlying litigation, *In Re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637, pending in the Northern District of Illinois before Judge Thomas M. Durkin.

The basis of this action and motion is that Golden State has unreasonably refused to produce transactional data or documents showing its sales and purchases of "Broilers"[1] to the CIIPP Class during the Class Period. Additionally, as set forth further herein, Golden State has failed to meet and confer in good faith regarding CIIPPs' subpoena, which has further frustrated efforts to efficiently resolve these issues. Golden State contends, in conclusory fashion, that it has no responsive documents. This contention is contradicted by record evidence produced in the case demonstrating Golden State as the "ship to" and "bill to" entity for Defendants' Broilers. CIIPPs have advised Golden State of this evidence. Golden State has no answer. Wasting attorney time, and now judicial resources, Golden State refuses to discuss the conflicting information and will not answer the simple question of whether it indeed purchased or sold Broilers during the relevant time period—the critical issue to resolve through CIIPPs subpoena. It has failed to provide any explanation for why it appears as the "ship to" and "bill to" entity for Broilers in Defendants' transactional data.

---

[1] Broilers is defined as: "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards."

Had Golden State engaged in good faith with CIIPPs and provided such clarity, the present action might have been avoided. But because Golden State has stubbornly refused to engage in good faith meet and confers with CIIPPs, including by failing to engage in a reasonably diligent search of their own records, this enforcement action has become necessary.

Golden State's conduct here stands in stark contrast to numerous other food service distributors from whom CIIPPs have subpoenaed and received extensive transactional data in the underlying case—transactional data that is routinely produced in similar antitrust litigation, as outlined herein. Golden State's refusal to meet and confer in good faith is inexplicable.

CIIPPs respectfully request that this Court order Golden State to comply with its obligations under the Federal Rules, respond to CIIPPs' subpoena, and produce responsive documents and transactional data. If Golden State has information that can provide clarity regarding the conflicting evidence of its involvement in Broiler distribution, then it should be required to provide that clarity in the robust discovery meet and confers that are contemplated by the Federal Rules and required by this Court. Golden State should be required to state and then demonstrate, unequivocally, whether it purchased or sold Broilers during the Relevant Time Period.[2] If Golden State has responsive data, then Golden State should be ordered to produce it.

I. **INTRODUCTION**

The underlying litigation involves a large, complex antitrust case involving coordinated and collusive supply and other anticompetitive restrictions by the Defendants of Broilers for the purpose of fixing prices. The CIIPP Class is comprised of indirect purchasers of Broilers, and is largely made up of restaurants

---

[2] The Relevant Time Period as stated in CIIPPs' subpoena to Golden State Foods is January 1, 2006 through the present, unless otherwise noted.

and other commercial food preparers that purchase Broilers to make into meals for individual consumption.

The CIIPP Class has alleged that they indirectly purchased Broilers from the Broiler producer Defendants, such as Tyson, Pilgrim's, Foster Farms, and others at supracompetitive prices. *See* Prevost Decl., **Exhibit 1** (Class Action Complaint in the underlying action). Entities like Golden State directly purchase Broilers from Defendants and resell those Broilers to CIIPP class members and others in the United States. As indirect purchasers in a price-fixing case, CIIPPs must demonstrate that the price-fixing conduct undertaken by members of the conspiracy impacted the prices at which the distributors purchased the Broilers ***and*** that those supracompetitive prices were passed-through the distribution chain to the CIIPP class. The evidence for demonstrating "pass-through" in this case is the transactional data from distributors, such as Golden State, showing what products the distributor purchased and at what price, and subsequently which of those products were resold to commercial food preparers in the CIIPP class and at what price. Transactional data of this nature is routinely produced in antitrust litigation. *See e.g.,* F. Matthew Ralph, Caroline B. Sweeney, E-Discovery and Antitrust Litigation, Antitrust, Fall 2011, at 58, 61 (citing case decisions), a copy of which is attached hereto as **Exhibit 2** to the Prevost Decl.

Transactional data, of the kind requested by CIIPPs, is commonly (and by necessity) maintained by companies such as Golden State for their own internal business purposes, which is true in this case. Based on its own website, Golden State says that it is (or was) the exclusive supplier for McDonalds, and has been for over 50 years.[3] The Defendants named in this case are the largest Broiler suppliers in the country. Prevost Decl. **Ex. 1.** It would be illogical (and indeed, entirely impractical for a business of its size) to believe Golden State does not maintain

---

[3] *See* Golden State Foods, *About Us*, available at https://goldenstatefoods.com/about-us/history/

electronic accounting records of both its purchase of Broilers from Defendants, and its sales of Broilers to its customers. Indeed, it would be impossible to run such a distribution business without such a system. Yet, Golden State has not only refused to produce a single document or record, it has entirely failed to engage in meet and confers in good faith, despite CIIPPs' counsel's consistent efforts. *Id*. at ¶¶ 12-29.

Extensive transactional data produced by Defendants in this case regarding transactions with their direct purchasers clearly identifies Golden State Foods as the "bill to" and "ship to" entity for sales of their Broilers. Notwithstanding this clear indication that Golden State has responsive documents, because it purchases Broilers from Defendants, it has refused to meet and confer to discuss the nature of these transactions and refused to confirm whether it has purchased or sold Broilers from the Defendants as the record data reflects. Golden State's lack of effort should not be rewarded.

Despite consistent and longstanding efforts by CIIPPs' counsel to engage Golden State in a good faith meet and confer process, it has refused to produce the data or otherwise outright ignored CIIPPs' requests to discuss the matter further; thereby necessitating this motion practice. Golden State should be ordered to produce the requested documents to CIIPPs immediately.

## II.   FACTUAL BACKGROUND

### A.   The Underlying Case and Golden State Foods

The underlying litigation, *In Re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637, is pending in the Northern District of Illinois. In this case, CIIPPs have alleged they indirectly purchased Broilers from the largest Broiler producers in the country. *See* Prevost Decl., **Exhibit 1** (Class Action Complaint in the underlying action). Part of CIIPPs' burden as indirect purchasers is to demonstrate that the price-fixing conduct by members of the conspiracy impacted the prices at which the distributors, like Golden State, purchased the Broilers and that those supra-competitive prices were passed-through the distribution chain to

the CIIPP class.[4]  Transactional data from distributors, like Golden State, is routinely produced in this type of litigation to demonstrate pass-through of the overcharge. *See infra* at III(C).

Like countless other distributors, CIIPPs served a subpoena on Golden State because evidence demonstrated it is a major distributor of Broilers. Golden State is a large business, with an international presence. *See* Golden State Foods, *About Us*, available at https://goldenstatefoods.com/about-us/.  Golden State's own website describes it as

> ***one of the largest diversified suppliers to the foodservice industry***. Headquartered in Irvine, Calif., the $5 billion company is values-based with proven performance in superior quality, innovation and customer service. Established in 1947, [Golden State] currently services 100+ leading brands (125,000+ restaurants/stores) from its 50+ locations on five continents. Its core businesses include: processing and distribution of liquid products, protein, produce, dairy and other services. The company employs approximately 6,000 associates and is 100 percent management-owned and run

*Id.* (emphasis added).

Golden State further advertises that it "provides custom distribution services to iconic customers throughout the United States" and is a "custom distribution company [that] is values-based and services thousands of restaurants throughout the U.S."[5]

---

[4] *Stanislaus Food Products Co. v. USS-POSCO Industries*, 2012 WL 1940662, at *6 (E.D. Cal., May 29, 2012) (ordering production of transactional purchase and sales data, finding it "foundational information [the] plaintiff needs."); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 376 (M.D. Fla. 2018) (distributor transactional data directly relevant to expert analysis of class certification); *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 292 F.Supp.3d 14, 53 (D.D.C. 2017) (same); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 264 F.R.D. 603, 613, 615 (N.D. Cal. 2009).

[5] *See* Golden State Foods, Quality Custom Distribution, available at https://goldenstatefoods.com/logistics/quality-custom-distribution/

From 1967 to present, Golden State has been the exclusive supplier for the McDonalds restaurant chain, a commercial food preparer.[6] Based on its own representations, Golden State is clearly a large player in the food supply chain that is central to this case.

### B.     CIIPPs' Subpoena and Golden State's Significance in the Market

The CIIPPs served Golden State with a non-party subpoena on **May 29, 2019**—over a year ago. *See* Prevost Decl., **Exhibit 3.** CIIPPs' subpoena was comprised of five document requests, primarily seeking GSF's purchase and sales data of Broilers from January 1, 2006 and present. The subpoena defined Broilers identically to the definition in CIIPPs' complaint. *See id.*, Ex. 3. The key document requests for purposes of this motion are Request for Production Nos. 2 and 4, which seek the production of all data reflecting Golden State's purchases and subsequent sales of Broilers. *Id.*

CIIPPs served identical subpoenas on numerous commercial food distributors, and successfully negotiated, and received transactional sales and purchase data from at least 22 similar food service distributors. Prevost Decl. ¶ 8. Golden State is only the *second* non-party whose unresponsiveness has now necessitated court intervention. *Id.* ¶ 9. In the first such case, CIIPPs prevailed and the court ordered the non-party to produce the data at issue. *Id.* ¶ 9.

As detailed further herein, CIIPPs have discovered that Golden State is a large distributor in the Broiler industry. Aside from public information on GSF's own website, evidence in this case from several sources also supports the same conclusion. *Id.* ¶ 10.

GSF's name is found in both documents and data produced by Defendants, including Wayne Farms, Pilgrims, Purdue and Tyson (among others), in the underlying case. Notably, GSF's name is listed in the "bill to" and "ship to" fields

---

[6] *See* Golden State Foods, About Us, available at https://goldenstatefoods.com/about-us/history/

of several Defendants' transactional data, revealing that they purchased and/or sold Broilers during the class period. Non-party Broiler transactional data also contains mention of Golden State's name, similarly demonstrating that Golden State is a large purchaser and seller of chicken from Defendant Broiler producers. And as stated on its website, Golden State is an exclusive supplier for McDonalds, and has been for over 50 years. While CIIPPs learned that Golden State sold part or all of its chicken business to a company called Martin Brower in November 2018, this does not mean that GSF lacks responsive documents, especially since the time period listed in CIIPPs' subpoena is January 1, 2006 to present. Prevost Decl. ¶ 11; 18.

In sum, it is clear that Golden State has purchased Broilers from the Defendants, and on many occasions. *Id.; see* Section II(B), *supra*.

### C. Compliance with Rule 37 and CIIPPs' Efforts to Meet and Confer With Golden State

#### 1. CIIPPs' Substantial Efforts to Meet and Confer with Golden State

After not receiving any response to the duly served subpoena within the time limits required by the Federal Rules, CIIPPs' counsel affirmatively sought out GSF to discuss its noncompliance. Prevost Decl. at ¶ 12. After serving the May 29, 2019 subpoena, on July 16, 2019, counsel for CIIPPs wrote a letter and called Golden State's in-house department directly seeking a response. *Id*. at ¶ 13. Golden State ultimately served responses and objections on August 28, 2019, <u>34 days</u> after the deadline for responses and objections under Rule 45. The waived objections and responses to CIIPPs' subpoena are attached as **Exhibit 4** to the Prevost Decl.

Since then, CIIPPs have repeatedly attempted to meet and confer with Golden State in good faith to obtain a response or explanation for its non-responsiveness. *Id*. at ¶ 14. Between September 20, 2019 and April 21, 2020, CIIPPs' counsel made at least **six** separate attempts to contact counsel for Golden State, via phone, email, and letter, to meet and confer. *Id*. at ¶ 14. On April 22,

2020, Golden State provided a conclusory Declaration asserting that it purportedly had no responsive records and that it did not purchase or sell "Broilers." A true and correct copy of this Declaration is attached as **Exhibit 7** to the Prevost Decl.

After receiving the declaration, CIIPPs continued their ongoing review and evaluation of evidence produced in the underlying case. Prevost Decl. Ex. ¶ 16. Public information and other evidence produced in this litigation from several sources flatly contradict Golden State's contentions, as stated in its declaration. *Id*. at ¶ 17. As noted, data produced by Defendants identify Golden State as a "bill to" and "ship to" recipient of Broilers. Prevost Decl. ¶ 18. Golden State's name appears in Defendants' documents and also appears in non-party data produced in this case. *Id*. at ¶ 18-19. Based on this evidence, it appears that Golden State is a large purchaser of chicken from Defendant Broiler producers. *Id*. at ¶ 18-19.

As a result of the foregoing evidence, CIIPPs again attempted to meet and confer with Golden State to obtain better clarity regarding its position. Between April 23 and May 28, 2020, Golden State and CIIPPs' counsel spoke twice, wherein CIIPPs attempted to understand the discrepancy between Golden State's representations in the declaration with Defendants' transactional data demonstrating that GSF has, in fact, purchased Broilers during the relevant period. *Id*. ¶¶ 16-20. Golden State's counsel was unable, or unwilling, to respond to CIIPPs' questions over the phone or in writing. *Id*. ¶ 20.

On June 17, 2020, June 23, 2020 and June 29, 2020, CIIPPs' counsel contacted counsel for GSF to meet and confer further. *Id.* ¶ 21. GSF's counsel did not respond to any of these efforts. *Id.* ¶ 21-29.

On July 22, 2020, CIIPPs' counsel sent Golden State's counsel a letter stating that absent a response, CIIPPs would be forced to seek Court intervention. *Id*. ¶ 22. In the letter, CIIPPs explained their belief that Golden State had responsive documents because, among other reasons, its name appeared in several

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS'
MOTION TO ENFORCE SUBPOENA                                                                 8

different evidentiary sources as a "bill to" or "ship to" recipient of Broilers. *See* Section II(B), *supra*, *see also id.* ¶ 18.

CIIPPs went further, despite it not being their burden to do so. CIIPPs additionally provided exemplar invoice numbers of Golden State's purchases of Broilers from Defendants so that it could conduct further due diligence on the matter. Prevost Decl. ¶ 23.

GSF responded on July 27, 2020 seeking to review the underlying, highly confidential data bearing its name, but not otherwise answering any of CIIPPs' stated questions. *Id.* ¶ 24. On July 30, 2020, CIIPPs counsel suggested holding a teleconference call between counsel for CIIPPs, counsel for GSF, and a GSF representative who could clarify the nature of its business and answer other related questions. *Id.* ¶ 25. CIIPPs made clear that substantive answers to their questions might obviate Golden State's obligation to produce documents responsive to CIIPPs' subpoena or engage in further meet and confer. *Id.* ¶ 25.

On August 3, 2020, GSF rejected CIIPPs' request for a phone call, stating it is "unaware of any authority that obligates GSF to participate in a phone call for CIIPPs and answer numerous questions about its internal operations." *Id.* ¶ 26. Thereafter, CIIPPs' counsel called counsel for GSF to cure their impasse, and followed up with an email seeking a return call and expressing a desire to avoid motion practice. *Id.* ¶ 27. The next day, GSF again requested the opportunity to review the (highly confidential) documents, but refused to answer the threshold question of whether it purchases or sells Broilers. *Id.* ¶ 27. And on August 18, 2020, CIIPPs' counsel explained her willingness to send a "sample of the data" listing Golden State as a purchaser or seller of Broilers, but first sought a response to one threshold question: Did Golden State Foods buy Broilers from broiler producers during the Relevant Period? Golden State never responded to this email and has since continued to refuse to produce the requested documents under Rule 45, thus necessitating this Court's intervention.

### 2. Compliance with Local Rule 37-1

Per Local Rule 37-1, as the moving party raising a discovery dispute, CIIPPs must initiate a meet and confer conference with the respondent in a "good faith effort to eliminate the necessity for hearing the motion." *See* L.R. 37-1. As the foregoing makes clear, CIIPPs made consistent, repeated efforts to meet and confer with Golden State, often explicitly requesting a call with the specific purpose of avoiding motion practice. Prevost Decl. ¶ 29. Given Golden State's long-standing lack of participation in substantive meet and confer, CIIPPs have complied with the requirements of L.R. 37-1, or in the alternative, find compliance with that rule futile under these circumstances. *See* Section II(C)(1) *infra*.

### III. ARGUMENT

#### A. CIIPPs Served Golden State with a Valid Subpoena

CIIPPs validly served Golden State with a subpoena for documents pursuant to Rule 45. *See* Prevost Decl. **Exhibit 3.** Rule 45(c)(2)(A) states that a subpoena may command "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." According to its website, Golden State's headquarters is located in Irvine, California[7], and the California Secretary of State lists its address as: 18301 Von Karman Avenue, Suite 1100, Irvine, CA 92612. As such, the Central District of California is the proper venue for bringing this motion to enforce compliance with the subpoena and having been served with a proper subpoena, there is no excuse for GSF's non-compliance. *See* Rule 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."); *see also* Rules 45(e)(2)(B); (d)(1); and (d)(3)(A).

---

[7] *See* Golden State Foods, Locations, available at https://goldenstatefoods.com/locations/

### B. Golden State Failed to Timely Respond to CIIPPs' Subpoena, Waiving All Objections

As noted, CIIPPs served their subpoena on May 29, 2019, and Golden State did not respond or assert objections until August 28, 2019, 34 days after the deadline for such objections; and only then after counsel for the CIIPPs pestered them for a response. Prevost Decl. ¶ 13. Having failed to timely serve their responses and objections, it is well-settled that Golden State has waived them. *See* Fed. R. Civ. Proc. 45(d)(2)(B). *Isenberg v. Chase Bank USA, N.A.*, 661 F.Supp.2d 627, 629 (N.D. Tex. 2009) (failure to serve responses or objections within the timeframe contemplated by Rule 45 or commanded in the subpoena "typically constitutes waiver of such objections."). Thus, putting aside its (unsupported) contention that it has no responsive documents, this Court should not consider any objections by GSF, whether they go to proportionality, the burden of production, or some other issue.

### C. CIIPPs Seek Transactional Data That Is Routinely Produced in Indirect Purchaser Antitrust Cases

CIIPPs' subpoena seeks documents that squarely fall within the scope of permitted discovery, particularly in an indirect purchaser antitrust case such as this. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claims or defense of any party." *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.* 2014 WL 585750, at *3 (S.D. Tex. Feb. 14, 2014); *citing Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). *See In re: Cathode Ray Tube (CRT) Litig.*, 2014 WL 5462496, at *8 (N.D. Cal. Oct. 23, 2014) (broad discovery permitted in antitrust actions).

Transactional data from distributors and market intermediaries, such as Golden State, is highly relevant in antitrust actions such as this one. In such cases, an indirect purchaser is required to demonstrate "pass-through", meaning that they

must prove that the supracompetitive overcharge was passed through from the direct purchasers (distributor) to the CIIPPs (here, restaurants, or entities that purchased Broilers for commercial food preparation). *See, e.g., In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 605-606 (N.D. Cal. 2010) (transactional data incorporated in expert analysis of pass-through impact to IPPs); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *15 (N.D. Cal. June 20, 2013) (distributor data used as part of common evidence to quantify pass-through harm to IPPs).

Transactional data is viewed by Courts as relevant and important, and is routinely produced in antitrust cases of this kind. *See Stanislaus Food Products Co. v. USS-POSCO Industries*, 2012 WL 1940662, at *6 (E.D. Cal., May 29, 2012) (ordering production of transactional purchase and sales data, finding it "foundational information [the] plaintiff needs."); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 376 (M.D. Fla. 2018) (distributor transactional data directly relevant to expert analysis of class certification); *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 292 F.Supp.3d 14, 53 (D.D.C. 2017) (same); *see also In re: Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-1819-CW (N.D. Cal. Mar. 1, 2010); *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, 2017 WL 4230124, at *5 (S.D. Fla., May 15, 2017, No. 16-62492-MC) (requiring production of non-party transactional data, finding "the interests of justice require the enforcement of the subpoena."); *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 2010 WL 11613859, at *4 (D.D.C., Sept. 9, 2010) (denying non-party motion to quash subpoena, and ordering non-party to produce transactional data).

In this case, pass-through will be demonstrated by showing how the price paid by distributors, such as Golden State, is compared to the resale price sold to the CIIPP Class. The Broiler purchase data will provide evidence of the amount of the overcharge paid by the distributor, here GSF. And Golden State's sales data

will provide evidence of the amount of the overcharge "passed-on" to the CIIPP Class.

Because the documents requested in CIIPPs' subpoena easily fall within the scope of discovery, and are undoubtedly important in this case for purposes of calculating damages, this Court should order Golden State to comply with the subpoena and produce the requested documents.

### D. Despite Golden State's Refusal to Properly Meet and Confer, CIIPPs Have Obtained Substantial Evidence that it has Responsive Documents in its Possession, Custody, or Control

As made clear by the written record submitted herewith, Golden State has thus far frustrated the discovery process by its refusal to meet and confer in good faith, conduct a reasonably diligent search, and provide basic information that would have facilitated the meet and confer process. Prevost Decl. ¶¶ 12-29. Golden State's conduct has turned the Federal Rules on its head. In seeking relevant information from a non-party, it is not the party's obligation to prove a negative, or otherwise demonstrate that the non-party has the requested information.  Instead, it is the subpoena recipient's obligation to conduct a reasonably diligent investigation to understand whether the company possesses responsive material and, if so, where that material is located.  But GSF's utter failure to even meet and confer in this case frustrated that process—a process that has worked without difficulty for the large numbers of other food distributors that also received CIIPP subpoenas. Notwithstanding the foregoing, CIIPPs' independent investigation has revealed that Golden State *does* possess responsive data that it is withholding. *Id*. ¶ 16-19.

*First*, substantial evidence – both publicly available, and produced in the underlying litigation – reinforces the fact that Golden State possesses relevant documents. As mentioned, it is listed as a "bill to" and "ship to" recipient in a number of observations in the transactional data produced by the Defendant Broiler producers, in Defendants' documents, and in the data productions from other non-party recipients of CIIPPs' subpoenas.  Prevost Decl. ¶ 18-19.

And while Golden State sold part, or all, of its chicken business to a company called Martin Brower in November 2018, GSF's position has not been that it had responsive documents at some point and that with its sale to Martin Brower, all such documents left the premises. Instead, its position is that it does not, and never has, purchased Broilers during the Relevant Period.[8] For its part, Martin Brower has produced documents responsive to CIIPPs' subpoena from November 2018 forward, further reinforcing that GSF has relevant documents. *Id.*, ¶ 11. In any event, GSF had ample opportunity to clarify or explain this in a meet and confer, which it failed to do. Prevost Decl. ¶¶ 12-29.

*Second*, while its objections were not timely made (and are thus waived), objections commonly asserted by non-parties, if raised by Golden State in opposition to this motion, do not apply here. Based on Golden State's size and presence in the market, the burden of production is low because the data is undoubtedly maintained in an enterprise sales database. And if Golden State is concerned about confidentiality—a concern it has never articulated —such a concern is without merit, as there is a Stipulated Protective Order in this case from which it can seek protection. *See James Freeman d/b/a Freeman & Associates, Inc. v. Dekker Vacuum Technologies, Inc.*, 2015 WL 8074056, at *1 (S.D. Tex. Dec. 4, 2015) (holding that confidentiality objections were mooted by the existence of a protective order). Attached hereto as **Exhibit 5** to the Prevost Declaration is a true and correct copy of the Stipulated Protective Order entered in the underlying action.

In sum, there is ample indicia that GSF has documents and data responsive to CIIPPs' requests, and that Golden State's production will clarify the supply relationship between Defendants, GSF, and other non-parties, which is important to CIIPPs' expert's analysis on the merits in this case. Prevost Decl. ¶¶ 11-12, 17-

---

[8] The Relevant Time Period for CIIPPs' subpoena begins in January 2006.

18. Moreover, GSF's refusal to confirm or deny whether it bought or sold Broilers between January 2006 and November 2018, or explain the evidence contradicting its position is unjustified and at odds with how basic discovery practice in federal courts is intended to proceed. *Id*. at ¶¶ 12-29.

## IV. CERTIFICATE OF CONFERENCE

CIIPPs, by and through undersigned counsel, and pursuant to Local Rule 37.1, hereby certify that multiple meet and confer conferences were held between counsel for the CIIPPs and counsel for Golden State regarding its refusal to comply with the subpoena. Prevost Decl. ¶¶ 12-29.  After months of discussions where counsel for Golden State was either entirely non-responsive, or largely unwilling to substantively engage in meet and confer, it became evident that no agreement could be reached and Golden State would not produce the data absent Court intervention.  Since Golden State has not responded to several of CIIPPs latest attempts to resolve this matter, it would appear that counsel for Golden State agrees that the parties are at impasse. *Id.*

## V. CONCLUSION

For the reasons set forth above, CIIPPs respectfully request that this Court issue an order:

(1) Compelling Golden State to produce all of its responsive transactional data to CIIPPs within ten (10) days of the issuance of the order pursuant to Rule 45(c)(2);

(2) Overruling any objections raised by Golden State; and

(3) For monetary sanctions in an amount according to proof for the time and cost expended in bringing this motion, including preparing all documents and participating in oral argument if any; and

(4) For such other and further relief, including as the Court deems just and proper.

Dated:  November 13, 2020           Respectfully submitted,

By: */s/ Tamarah P. Prevost*
Adam J. Zapala (SBN 245748)
Tamarah P. Prevost (SBN 313422)
James Dallal (SBN 277826)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
tprevost@cpmlegal.com
jdallal@cpmlegal.com

*Interim Co-Lead Class Counsel on Behalf of Commercial and Institutional Indirect Purchasers*