Joseph W. Cotchett (SBN 36324)
Adam J. Zapala (SBN 245748)
Tamarah P. Prevost (SBN 313422)
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
tprevost@cpmlegal.com

*Interim Co-Lead Class Counsel on Behalf of Commercial and Institutional Indirect Purchasers*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In Re Broiler Chicken Antitrust Litigation*<br><br>This Document Relates to:<br>All Class Cases | Case No. _____<br><br>Action Pending in:<br>**Northern District of Illinois**<br>Case No. 1:16-cv-08637<br><br>**DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA** |

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND
INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA

I, Tamarah P. Prevost, declare as follows:

1. I am a partner of Cotchett, Pitre & McCarthy, LLP. During the pendency of this litigation, my firm has acted as interim co-lead class counsel for the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"). I make this declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2. I submit this declaration in support of CIIPPs' Motion to Enforce the Subpoena against Golden State Foods, Corp. ("Golden State").

## BACKGROUND

3. Attached hereto as **Exhibit 1** is a true and correct copy of CIIPPs' Seventh Amended Consolidated Class Action Complaint in the underlying litigation. In this case, CIIPPs assert claims against producers of Broilers.[1] The Defendants named in this case are the largest Broiler suppliers in the country.

4. Transactional data of the type sought by CIIPPs from Golden State here is customarily produced in cases of this kind. For further examples of courts that have ordered production of such data, *see* F. Matthew Ralph, Caroline B. Sweeney, E-Discovery and Antitrust Litigation, Antitrust, Fall 2011, a true and correct copy of which is attached hereto as **Exhibit 2**.

5. A true and correct copy of CIIPPs' non-party subpoena for documents, propounded to Golden State on May 24, 2019 is attached hereto as **Exhibit 3**.

6. A true and correct copy of the Golden State's objections and responses to CIIPPs' subpoena are attached hereto as **Exhibit 4**. These were served on August 28, 2019, and are thus waived.

---

[1] Broilers is defined as: "chickens raised for meat consumption to be slaughtered before the age of 13 weeks, and which may be sold in a variety of forms, including fresh or frozen, raw or cooked, whole or in parts, or as a meat ingredient in a value added product, but excluding chicken that is grown, processed, and sold according to halal, kosher, free range, or organic standards."

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA    1

7. A true and correct copy of the Stipulated Protective Order entered in the underlying action is attached hereto as **Exhibit 5**.

8. CIIPPs propounded subpoenas on numerous non-parties in the underlying case, and at least 22 of them produced transactional data to CIIPPs. These non-parties were responding to the same subpoena propounded to Golden State here. *See* **Ex. 3**.

9. Of these subpoenaed non-parties, only one other refused to produce transactional data, thus necessitating court intervention. After briefing the issue before the court overseeing this case, CIIPPs prevailed and the court ordered the non-party to produce the data at issue.

10. Aside from public information on Golden State's own website, evidence in this case from several sources also supports the conclusion that Golden State has documents responsive to CIIPPs' subpoena. For example, I reviewed Golden State's website, which at the time of this motion, describes it as an exclusive supplier for McDonalds for over 50 years.

11. CIIPPs also learned that Golden State sold part or all of its chicken business to a company called Martin Brower in November 2018. However, in meet and confer, Golden State a) never even mentioned Martin Brower, and b) never claimed it had responsive documents at some point and those documents are now in Martin Brower's possession. And the simple fact that Golden State sold its chicken business in 2018 does not demonstrate it lacks responsive documents, especially since the time period listed in CIIPPs' subpoena is January 1, 2006 to present. Moreover, Martin Brower itself produced documents responsive to our subpoena, suggesting strongly that Golden State would also have responsive documents. Golden State had ample opportunity to clarify or explain this in a meet and confer, which it failed to do.

LAW OFFICES
COTCHETT, PITRE & MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA    2

## MEET AND CONFER EFFORTS UNDERTAKEN BY CIIPPs

12. After not receiving any response to the duly served subpoena within the time limits required by the Federal Rules, I affirmatively sought out Golden State to discuss its noncompliance.

13. After serving the May 29, 2019 subpoena, on July 16, 2019, I wrote a letter and called Golden State's in-house department directly seeking a response. Golden State ultimately served responses and objections on August 28, 2019, 34 days after the deadline for responses and objections under Rule 45. *See* **Ex. 3**.

14. Since then, I repeatedly attempted to meet and confer with Golden State in good faith to obtain a response or explanation for its non-responsiveness. Between September 20, 2019 and April 21, 2020, I made at least six separate attempts to contact counsel for Golden State, via phone, email, and letter, to meet and confer. A complete compendium of the meet and confer correspondence between my office and Golden State is attached hereto as **Exhibit 6**.

15. On April 22, 2020, Golden State provided a conclusory Declaration asserting that it purportedly had no responsive records and that it did not purchase or sell "Broilers." This Declaration was signed under penalty of perjury by John Page, Custodian of Records for Golden State Foods. A true and correct copy of this declaration is attached hereto as **Exhibit 7**.

16. After receiving the declaration, CIIPPs continued their ongoing review and evaluation of evidence produced in the underlying case, including of public information.

17. Public information and other evidence produced in this litigation from several sources contradict the contentions in Golden State's declaration.

18. Golden State's name is found in both documents and data produced by Defendants, including Wayne Farms, Pilgrims, Purdue and Tyson (among others), in the underlying case. Golden State's name is listed in the "bill to" and

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA   3

"ship to" fields of several Defendants' transactional data, revealing that they purchased and/or sold Broilers during the class period.

19. Non-party Broiler transactional data also contains mention of Golden State's name, similarly demonstrating that Golden State is a large purchaser and seller of chicken from Defendant Broiler producers.

20. As a result of the foregoing evidence, CIIPPs again attempted to meet and confer with Golden State to obtain better clarity regarding its position. Between April 23 and May 28, 2020, I spoke with counsel for Golden State twice, and asked questions to understand the discrepancy between Golden State's representations in the declaration with Defendants' transactional data demonstrating that GSF has, in fact, purchased Broilers during the relevant period. Golden State's counsel was unable, or unwilling, to respond to my questions over the phone or in writing. *See* **Ex. 6**.

21. On June 17, 2020, June 23, 2020 and June 29, 2020, I contacted counsel for GSF to meet and confer further. GSF's counsel did not respond to any of these efforts. *See* **Ex. 6**.

22. On July 22, 2020, I sent Golden State's counsel a letter stating that absent a response, CIIPPs would be forced to seek Court intervention. In the letter, I explained my belief that Golden State had responsive documents because, among other reasons, its name appeared in several different evidentiary sources as a "bill to" or "ship to" recipient of Broilers. I also explained "it would appear quite odd if GSF did not have an invoice or other purchase or sales record corresponding to these data sets…" Finally, I asked Golden State to "participate in a substantive, good faith meet and confer call to clarify [CIIPPs'] understanding of its role." And closed by saying: "we may be willing to limit our requests or discuss ways to lessen GSF's responding to them. But GSF's persistent non-response is no longer workable."

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND
INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA     4

23. I also provided exemplar invoice numbers of Golden State's purchases of Broilers from Defendants so that it could conduct further due diligence on the matter.

24. On July 27, 2020, Golden State responded asking to review the underlying, highly confidential data bearing its name, but not otherwise answering any of my stated questions. *See* **Ex. 6**.

25. On July 30, 2020, for efficiency and increased clarity, I suggested holding a teleconference call between myself, counsel for Golden State, and a Golden State representative who could clarify the nature of its business and answer other related questions. I made clear to Golden State in making this request, that substantive answers to my questions might obviate its obligation to produce documents responsive to CIIPPs' subpoena or engage in further meet and confer. *See* **Ex. 6**.

26. On August 3, 2020, Golden State rejected CIIPPs' request for a phone call, stating it is "unaware of any authority that obligates GSF to participate in a phone call for CIIPPs and answer numerous questions about its internal operations." *See* **Ex. 6**.

27. Thereafter, I called counsel for Golden State to cure their impasse and followed up with an email seeking a return call and expressing a desire to avoid motion practice. The next day, Golden State again requested the opportunity to review the (highly confidential) documents, but refused to answer the threshold question of whether it purchases or sells Broilers. *See* **Ex. 6**.

28. On August 18, 2020, I explained my willingness to send a "sample of the data" listing Golden State as a purchaser or seller of Broilers, but first sought a response to one threshold question: Did Golden State Foods buy Broilers from broiler producers during the Relevant Period? Golden State never responded to this email and has since continued to refuse to produce the requested documents, responsive to CIIPPs' subpoena. *See* **Ex. 6**.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND
INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA   5

29. CIIPPs made consistent, repeated efforts to meet and confer with Golden State, often explicitly requesting a call with the specific purpose of avoiding motion practice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 13, 2020 in Burlingame, California.

/s/ Tamarah P. Prevost
TAMARAH P. PREVOST

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

DECLARATION OF TAMARAH P. PREVOST IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASERS' MOTION TO ENFORCE SUBPOENA   6